IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

**FORD ANDREWS,**
    Plaintiff,

v.                                                      Civil Action No. 3:23cv264

**DETECTIVE R. CRAIG BROWN,**
    individually,

**LIEUTENANT WARREN M. HUDDLESTON,**
    individually,

**RB-HRIP RICHMOND MULTIFAMILY LLC,**

and

**HRI MANAGEMENT, LLC,**

    Defendants.

## FIRST AMENDED COMPLAINT

Plaintiff Ford Andrews complains and alleges against Defendants Detective R. Craig Brown, Lieutenant Warren M. Huddleston, RB-HRIP RICHMOND MULTIFAMILY LLC, and HRI MANAGEMENT, LLC, jointly and severally, as follows:

## NATURE OF ACTION

1. This is a civil action filed by an individual Plaintiff against Defendant law enforcement officers for unlawful entry and excessive force, as well as a pendent claim for breach of contract against a landlord, in which Plaintiff seeks compensatory and exemplary damages.

## PARTIES

2. Plaintiff Ford Andrews is an individual residing in the City of Richmond, Virginia.



3. Defendant R. Craig Brown is an individual residing in the City of Hampton, Virginia.

4. Defendant Warren M. Huddleston is an individual residing in Cumberland County, Virginia.

5. Defendant RB-HRIP RICHMOND MULTIFAMILY, LLC is a business entity incorporated in the Commonwealth of Virginia.

6. Defendant HRI MANAGEMENT, LLC is a business entity incorporated in the State of Delaware.

## JURISDICTION AND VENUE

7. This Court has personal and subject matter jurisdiction over this action as it is a civil rights action against law enforcement officers for violation of Plaintiff's Fourth Amendment rights pursuant to 42 U.S.C. § 1983, as well as a pendent claim against a landlord for breach of contract under 28 U.S.C. §1367.

8. This Court is an appropriate venue for this action pursuant to 28 U.S.C. §1391 because the individual Defendants resided within this judicial district at all times relevant to this action and because the individual Defendants engaged in tortious and contractual conduct in this judicial district resulting in the Plaintiff's injuries.

9. The Richmond Division is the appropriate division for this action because a substantial part of the events giving rise to Plaintiff's claims occurred within the Richmond Division.

## FACTUAL ALLEGATIONS

10. Plaintiff was a patient of Dr. Robert Schmidt, a plastic surgeon with an office in the Richmond area.

11. Plaintiff suffered post-surgical complications, including skin necrosis, from an operation which Dr. Robert Schmidt performed on Plaintiff.

12. Dr. Schmidt repeatedly refused to provide further treatment to Plaintiff for the post-surgical complications.

13. Plaintiff believed that his physician had abandoned him.

14. Having no success in being treated or even evaluated at Dr. Schmidt's place of business, Plaintiff visited Dr. Schmidt's residence in Chesterfield County.

15. An individual answered the front door, and told Plaintiff that Dr. Schmidt was not at home.

16. Plaintiff promptly left Dr. Schmidt's residence without any incident.

17. Dr. Schmidt went to the magistrate's office in Chesterfield County and swore out warrants for felony extortion and other criminal offenses.

18. All of the criminal warrants were nol prossed by the Chesterfield Commonwealth's Attorney prior to a preliminary hearing in Chesterfield General District Court.

19. But before the warrants were nol prossed, Plaintiff's Fourth Amendment rights were violated when members of the United States Marshals Capital Area Regional Fugitive Task Force violently entered Plaintiff's apartment at the Miller & Rhoads Apartments to arrest him on the arrest warrants obtained by Dr. Schmidt in Chesterfield.

20. Miller & Rhoads Apartments is owned and operated by RB-HRIP RICHMOND MULTIFAMILY LLC, and managed by HRI MANAGEMENT, LLC, a Delaware Corporation.

21. Plaintiff was a resident in the same apartment at Miller & Rhoads Apartments, for almost ten years prior to the violent entry by the United States Marshals on April 20, 2021.

22. On April 20, 2021, Plaintiff was unaware that any criminal warrants had been obtained against him by Dr. Schmidt.

23. In the several days preceding April 20, 2021, the area in the immediate vicinity of the Miller & Rhoads Apartments was the site of civil unrest.

24. The civil unrest included an incident of forced entry into the hallway of the Miller & Rhoads Apartments by armed protesters, which was shown on local television.

25. The protests had resulted in graffiti and broken plate glass windows at the ground floor level of the Miller & Rhoads Apartments and the contiguous Hilton Hotel.

26. The protests had resulted in projectiles striking the windows of Plaintiff's apartment, presumably intended for the windows of Richmond City Mayor Levar Stoney's apartment, which is directly below Plaintiff's apartment.

27. The criminal warrants obtained by Dr. Schmidt in Chesterfield were the legal basis used by the United States Marshals Capital Area Regional Fugitive Task Force (CARFTF) in Richmond to arrest Plaintiff.

28. On April 20, 2021, the CARFTF team was headed by Defendant R. Craig Brown, and included Defendant Warren M. Huddleston.

29. The CARFTF office is located a city block away from the Miller & Rhoads Apartments.

30. Detective Brown went to the rental office of the Miller & Rhoads Apartments on April 20, 2021, with the Chesterfield arrest warrants obtained by Dr. Schmidt in hand.

31. Kimberly Sauer, property manager of the Miller & Rhoads Apartments whose office is located in the lobby area of the Miller & Rhoads Apartments, was in her office when the CARFTF came to the Miller & Rhoads Apartments to arrest Plaintiff.

32. Sauer is an employee of Defendant HRI MANAGEMENT, LLC, and has been the property manager of the Miller & Rhoads Apartments for the entire time Plaintiff has resided there.

33. Detective Brown of the United States Marshals Fugitive Task Force showed the Chesterfield arrest warrants to Sauer.

34. Sauer made a copy of the arrest warrants for her file.

35. Sauer gave Detective Brown the key to Plaintiff's apartment.

36. On November 13, 2020, five months prior to this encounter between Sauer and the United States Marshals Fugitive Task Force, the United States Court of Appeals for the Fourth Circuit in *United States v. Brinkley*, 980 F.3d 377, had held that the Fourth Amendment requires a search warrant [not an arrest warrant] AND probable cause that the sought person is actually in the apartment.

37. Plaintiff, when alone in the apartment shortly after noon on April 20, 2021, heard someone in his home coming down the long L-shaped hallway.

38. Plaintiff quickly retreated into his bathroom and called 911 for help.

39. Individuals in civilian clothes, yelling and displaying firearms, appeared in Plaintiff's bedroom and physically subdued Plaintiff.

40. A recording of the eighteen minute 911 call placed by Plaintiff upon entry of the armed intruders records the intruders' shouts including homophobic slurs, threats of physical force, and the Plaintiff screaming for help.

41. Plaintiff was held without bond on the warrants obtained by Dr. Schmidt.

42. Plaintiff was transported to Riverside Regional Jail and held without bond for several days before a bond hearing was convened.

Case 3:23-cv-00264-MHL Document 25-1 Filed 09/06/23 Page 5 of 11 PageID# 109

43. Plaintiff's request for bond was opposed by the Commonwealth in General District Court. On appeal, the circuit court judge- still over the Commonwealth's stringent objection- granted an unsecured recognizance bond but only after Plaintiff was confined for seventeen days.

## COUNT I: UNLAWFUL ENTRY

### (*Against all Defendants*)

44. The allegations in paragraphs 3-43 *supra* are incorporated into this Count.

45. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable *searches* and seizures." U.S. Const., amend. IV (emphasis added).

46. In most cases, a search or seizure is unreasonable unless authorized by a warrant. *See, e.g., City of Los Angeles v. Patel,* 576 U.S. 409, 419 (2015).

47. The warrant requirement carries special force when police seek to enter a private home, which is "afforded the most stringent Fourth Amendment protection." *United States v. Martinez-Fuerte,* 428 U.S. 543, 561 (1976).

48. "With few exceptions, the question whether a warrantless search of a home is reasonable and hence constitutional must be answered no." *Kyllo v. United States,* 533 U.S. 27, 31 (2001).

49. "But a valid search warrant authorizes police to enter a home" to make an arrest, *Brinkley,* 980 F.3d at 384, if there is probable cause to believe that the person lives in the home and is actually physically present in the home. *Id.* at 386.

50. In the case at bar, law enforcement sought entry into Plaintiff's home on the basis of *arrest* warrants sworn out by Dr. Schmidt- not a search warrant.

6

51. Moreover, law enforcement did not have probable cause to believe that Plaintiff was in the apartment.

52. For either or both reasons, the U.S. Marshals Task Force's entry into Plaintiff's apartment was unlawful, and Plaintiff is entitled to damages for the unlawful entry and the arrest which ensued.

## COUNT II: EXCESSIVE FORCE

*(Against All Defendants)*

53. The allegations in paragraphs 3-52 *supra* are incorporated into this Count.

54. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches ***and seizures***." U.S. Const., amend. IV (emphasis added).

55. Virginia Code §19.2-83.6(A) provides that "[a]ny law enforcement officer who, while in the performance of his official duties, witnesses another law enforcement officer engaging or attempting to engage in the use of excessive force against another person ***shall intervene***, when such intervention is feasible, to end the use of excessive force, or to prevent the use of excessive force" (emphasis added).

56. Not only was the search in this case constitutionally deficient (see Count I *supra)*, but the force used to arrest (seize) Plaintiff was constitutionally unreasonable under the facts of this case.

57. The police were dressed in civilian clothes.

58. There were six officers in total including Defendants Brown and Huddleston.

59. The police were armed and displaying their firearms.

60. The police banged on the door and yelled.

61. The police gained entry using the key provided by the landlord and rushed into the apartment.

62. Plaintiff did not know that Dr. Schmidt had obtained criminal warrants against him because Plaintiff had done nothing illegal.

63. Plaintiff reasonably linked the violent entry to the recent protests.

64. Plaintiff's reaction was enhanced by his diagnoses for anxiety and PTSD.

65. The armed, violent entourage gathered in Plaintiff's bedroom, as Plaintiff fled to the bathroom to call 911.

66. When Plaintiff exited the bathroom, his bedroom was filled with numerous unknown persons in civilian clothes, displaying firearms, and yelling.

67. Plaintiff was tackled to the floor by Defendants Brown and Huddleston.

68. Homophobic slurs were shouted at him while he was being subdued.

69. Plaintiff sustained the following injuries during the seizure: broken tooth, nasal deviation, right eye lid and brow, facial lacerations, bleeding to right knee and shin, and large scrapes on back.

## COUNT III: BREACH OF CONTRACT

### (Against Defendants HRI MANAGEMENT, LLC and RB-HRIP RICHMOND MULTIFAMILY LLC)

70. The allegations in paragraphs 3-69 *supra* are incorporated into this Count.

71. Sauer, as the landlord's agent, did not have authority to consent to the search by providing the apartment key to the U.S. Marshal Service. The United States Supreme Court has

held that a warrantless search based on consent by a landlord is illegal. *Chapman v. United States,* 365 U.S. 610 (1961).

72. The "Apartment Lease Contract" in effect at the time of the entry by the U.S. Marshal Service in this case is dated May 18, 2017 [hereinafter "Lease"]. The Lease did not authorize landlord to agree to law enforcement's entry.

73. The Lease restricts the Landlord's disclosure rights. Specifically, the Lease reads that "[i]f someone requests information on you or your rental history, we are only permitted to release your rent payment history and amount of payment without your prior consent." Lease ¶ 17.

74. Moreover, the Lease specifically restricts entry to specific situations:

WHEN WE MAY ENTER. You shall not unreasonably withhold consent for us to enter the apartment in order to inspect the apartment, make necessary or agreed upon repairs, decorations, alterations or improvements, supply necessary or agreed upon services or exhibit the apartment to prospective or actual purchasers, mortgagees, tenants, workmen or contractors. We may enter the apartment without your consent in the event of an emergency. Unless impractical, we will give you 24 hours written notice of routine maintenance (not requested by you) to be performed in the apartment.

75. Furthermore, a lessor in Virginia covenants by statute that the lessee "paying the rent reserved and performing his covenants, shall peaceably possess and enjoy the demised premises, for the term granted, without any interruption or disturbance from any person." Virginia Code §55.1-1604.

76. *Brinkley* had been decided approximately five months prior to the events giving rise to this case. *Brinkley* was clear and controlling law governing the facts and attendant legal duties

which arose when the U.S. Marshals Fugitive Task Force went to the office of landlord's employee at the Miller & Rhoads Apartments to inquire about Plaintiff's whereabouts to arrest him on the Chesterfield warrants sworn to by Dr. Schmidt.

77. Despite the fact that *Brinkley* was controlling authority, decided just five months prior, and clearly factually and legally on "all fours" with the facts faced by the Task Force and the Miller & Rhoads property manager, Sauer gave the apartment key to the marshals and provided information to the marshals of Plaintiff's whereabouts.

78. Sauer's actions were blatantly violative of *Brinkley* in that the landlord's agent cooperated with law enforcement when presented with arrest warrants- but no search warrants.

79. Sauer's actions were blatantly violative of *Brinkley* in that the landlord's agent assisted law enforcement to arrest Plaintiff without probable cause that Plaintiff was in his apartment.

80. Defendant landlord breached its duty to ensure its lessee with quiet enjoyment of his home by failing to educate and instruct its agents- including Sauer- on the specific issues addressed in *Brinkley*.

81. If Sauer had been trained properly to adhere to *Brinkley,* Sauer would have insisted that the police apply to a neutral judicial officer to obtain a search warrant before entry into Plaintiff's apartment.

82. In so doing, the police and Sauer would have upheld the sanctity of the home which is the touchstone of the Fourth Amendment.

83. Instead, Sauer gave the key to Plaintiff's apartment to the police.

WHEREFORE, the Plaintiff demands judgment against the Defendants, jointly and severally, in the amount of Two Hundred and Fifty Thousand Dollars ($250,000), exemplary damages in the amount of One Hundred Thousand Dollars ($100,000), pre- and post-judgment interest, and his costs.

**TRIAL BY JURY IS DEMANDED**.

FORD ANDREWS
By Counsel

/s/
W. Mark Dunn (VSB# 21449)
**W. MARK DUNN, P.L.C.**
4701 New Kent Avenue
Richmond, Virginia 23225-3209
Telephone: (804) 928-9244
E-mail: wmarkdunn@icloud.com
*Counsel for Plaintiff*