UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| FORD ANDREWS, | ) |
|             Plaintiff, | ) |
| v. | ) Civil Action No. 3:23CV264 |
| R. CRAIG BROWN, et al., | ) |
|             Defendants. | ) |

**POSITION STATEMENT ON ABATEMENT**

Pursuant to this Court's Order dated February 21, 2024 (ECF No. 34), undersigned counsel submits this Position Statement on Abatement.

**I.  Defendants were federal actors acting under color of federal law as Special Deputy United States Marshals serving on the United States Marshals Capital Area Regional Fugitive Task Force.**

    A.  Plaintiff's Amended Complaint affirmatively alleges that Defendants were acting under color of federal law.

The United States Marshals Capital Area Regional Fugitive Task Force consists of federal, state, and local officers working in concert to arrest violent federal, state, and local fugitives wanted on federal, state, and local warrants under the aegis of the United States Marshals Service (USMS). The participating agencies detail officers to undertake joint fugitive investigations with the USMS, under which the detailed officers operate under the supervision and control of the USMS. Officers are appointed as Special Deputy U.S. Marshals (SpDUSM) and may exercise federal law enforcement powers, including the power to arrest, execute warrants, and use firearms. The SpDUSMs are state and local officers assigned to the USMS task force and are specially deputized by, and operate under supervision of, the USMS. *See* 28 U.S.C. § 566, note, and 34 U.S.C. § 41503.

In his Amended Complaint, Plaintiff affirmatively alleges on no fewer than <u>seven</u> separate occasions that his claims are based on actions taken by members of the United States Marshals Capital Area Regional Fugitive Task Force during his arrest. ECF No. 20, Am. Compl., ¶¶ 19, 27, 28, 29, 33, 36, 76. Plaintiff further affirmatively alleges that on April 20, 2021, the date of his arrest, the United States Marshals Capital Area Regional Fugitive Task Force "was headed by Defendant R. Craig Brown and included Defendant Warren M. Huddleston." Am. Compl., ¶ 28. As such, Plaintiff's allegations, by themselves, establish that Defendants acted as part of a federal task force and therefore were acting under color of federal law. Therefore, Plaintiff was required to serve the Defendants as federal actors pursuant to Fed. R. Civ. P. 4(i).

  B. <u>There is no factual uncertainty and there are no unanswered questions regarding the capacity in which Defendants were acting.</u>

Nevertheless, should the Court wish to look beyond Plaintiff's own allegations, attached to this Position Statement are five exhibits confirming that Defendants were acting under color of federal law in their roles as members of the United States Marshals Capital Area Regional Fugitive Task Force when they arrested Plaintiff on April 20, 2021. These documents are:

- Exhibit 1: Special Deputation Oath of Office, Authorization and Appointment, establishing that Defendant R. Craig Brown was deputized as a Special Deputy United States Marshal ("SpDUSM") on June 24, 2020, ten months before the events at issue, and that his deputization would remain in effect through July 31, 2022;

- Exhibit 2: Special Deputation Oath of Office, Authorization and Appointment, establishing that Defendant Warren M. Huddleston was deputized as a Special Deputy United States Marshal ("SpDUSM") on December 15, 2020, six months before the events at issue, and that his deputization would remain in effect through December 31, 2023;

- Exhibit 3: A United States Marshals Service Capital Area Regional Fugitive Task Force Memorandum of Understanding with the Chesterfield County Police Department, effective May 3, 2018, whereby the Chesterfield County Police Department agreed to

- become a participating agency and refer cases to the United States Marshals Capital Area Regional Fugitive Task Force;[1]

- Exhibit 4: A United States Marshals Service Regional Fugitive Task Force Memorandum of Understanding with the Virginia Department of Corrections,[2] effective January 8, 2021, whereby the Virginia Department of Corrections agreed to become a participating agency and refer cases to the United States Marshals Capital Area Regional Fugitive Task Force;[3] and

- Exhibit 5: A United States Marshals USM-11 Report of Investigation documenting the referral and adoption of Plaintiff's arrest warrant by the Capital Area Regional Fugitive Task Force; that the Task Force arrest team received approval from United States Marshals Service Supervisory Inspector Kevin Connolly in advance of executing the arrest warrant; and the circumstances of Plaintiff's arrest by members of a United States Marshals Service Capital Area Regional Fugitive Task Force.

Put simply, there is no factual uncertainty and there are no unanswered questions in this case. Plaintiff's arrest warrant was referred to and adopted by the United States Marshals Capital Area Regional Fugitive Task Force; the execution of Plaintiff's arrest warrant was approved in advance by USMS Supervisory Inspector Kevin Connolly; and Defendants SpDUSM Brown and SpDUSM Huddleston were acting in their roles as deputized members of the United States Marshals Capital Area Regional Fugitive Task Force when they executed Plaintiff's arrest warrant. Defendants were therefore acting under color of federal law when they arrested Plaintiff.

When determining whether an agent of a "mixed federal and state program" was a federal or state actor during the conduct at issue, *Rowe v. Tennessee*, 609 F.2d 259, 266 (6th Cir. 1979), reviewing courts have "indicated that the relevant inquiry focuses not on whose law is being

---

[1] At the time he was deputized as a SpDUSM, Defendant R. Craig Brown was employed by the Chesterfield County Police Department.
[2] At the time he was deputized as a SpDUSM, Defendant Warren M. Huddleston was employed by the Virginia Department of Corrections.
[3] Plaintiff attached this document as Exhibit 1 to his Response. ECF No. 33 at 7-9.

implemented, but rather on [whose] authority . . . was exerted in enforcing the law." *Tongol v. Usery*, 601 F.2d 1091, 1097 (9th Cir. 1979) (citing *United States v. Classic*, 313 U.S. 299, 326 (1941) (explaining that state action occurs when the actor "is clothed with the authority of state law")); *see also* Sheldon H. Nahmod, Civil Rights and Civil Liberties Litigation: The Law of Section 1983 § 2:16.

Countless courts addressing this issue have recognized that local law enforcement officers who are deputized to serve on a task force operated by the U.S. Marshals Service ("USMS") are acting as federal actors when they are conducting task force business. For example, in *Cain v. Rinehart*, 2023 U.S. App. Lexis 18993 (6th Cir. July 25, 2023), the plaintiff asserted 42 U.S.C. § 1983 claims against Brian Rinehart, a Wayne County Sheriff's Office deputy who "had been temporarily deputized to participate in a U.S. Marshals Task Force." *Id.* at *5. The Sixth Circuit rejected plaintiff's argument that Rinehart was acting under color of state law because he was employed by the Wayne County Sheriff's Office and the arrest warrant being served was a state warrant, holding that the members of a USMS Task Force were acting under color of federal law when they executed a state arrest warrant.

> [T]he nature and character of a cooperative federal-state program is determined by the source and implementation of authority for the program, not for the particular work that the agency chooses in the exercise of its authority, to perform on a given day. Here, the source and implementation of authority for the task force that attempted to execute the arrest warrant was the U.S. Marshal Service. Thus, because Rinehart was not acting under color of state law at that time, § 1983 does not apply, and [plaintiff's] constitutional claim could be brought only under *Bivens*.

*Id.,* at *6. Similarly, in *Nelson v. Weber*, 2017 U.S. Dist. LEXIS 111742 (W.D. Wash. May 19, 2017), the court concluded that state department of corrections officers who had been deputized to a USMS fugitive task force were acting as federal actors, not state actors, and therefore

4

dismissed plaintiffs 42 USC § 1983 claims. *Id.* at *8 (noting that "the Third, Sixth, and Tenth Circuits and district courts in the Second Circuit have categorized special deputies as federal actors"). *See also Challenger v. Bassolino*, 2023 U.S. Dist. LEXIS 113126, at *11 (D. N.J. June 30, 2023) (local detective acting as Special Deputy U.S. Marshal was acting under federal law while service on U.S. Marshals Task Force); *Aikman v. County of Westchester*, 691 F.Supp. 2d 496, 498 (S.D. N.Y. 2010) (recognizing that state and local law enforcement officers serving on federal task forces are treated as federal actors); *Lehal v. United States*, 2015 U.S. Dist. LEXIS 173610, (holding Bridgeport, Connecticut police officers who had been deputized as Special Deputy U.S. Marshals had acted under color of federal law when executing an arrest warrant).

In the present case, because it is beyond dispute that Defendants were acting as Special Deputy U.S. Marshals and were executing an arrest warrant as part of the U.S. Marshals Capital Area Regional Fugitive Task Force, Plaintiff was required to serve the Defendants as federal actors pursuant to Fed. R. Civ. P. 4(i).

    C.    <u>Plaintiff's arguments that Defendants may not have been federal actors are without merit.</u>

Plaintiff's response to the notice of abatement advances various arguments as to why he believes Defendants may not have been federal actors. As explained below, none of Plaintiff's arguments have merit. Notably, Plaintiff has not identified a single case in which a court has concluded that a state or local law enforcement officer who was acting as a member of a federal task force was a state rather than federal actor. Instead, the one case on which Plaintiff relies, *McLeod v. United States*, 2021 U.S. Dist. LEXIS 238497 (S.D. Al. Dec. 14, 2021), actually refutes Plaintiff's arguments that Defendants may have been state actors and confirms that Defendants were acting as federal actors under federal authority during all relevant times.

5

In *McLeod*, the Southern District of Alabama displayed skepticism that the officers at issue were federal actors because a state agency had managed the operation, the warrant had not been adopted by a federal agency, no federal agents had investigated the matter, the federal agency had no knowledge of the operation, and the state officers were only deputized the day of the incident. *Id.* at *19-20. Surveying nationwide case law, the court determined that "local law enforcement [is only] deemed to be federal actors [when] the underlying investigation either contained a federal nexus or arose from a criminal investigation led by a federal agency." *Id.* at *23. A "federal nexus" was present when the warrant was adopted by a federal agency, *id.* (citing *United States v. Smith*, 743 Fed. App'x 943, 946 (11th Cir. 2018)), or when state officers had been deputized, *id.* (citing *Smith*, 743 F. App'x at 946 (determining that a local sheriff was a federal actor during the execution of a warrant because he had been deputized and the U.S. Marshals Regional Fugitive Task Force had adopted the warrant); *Majors v. City of Clarksville*, 113 F. App'x 659, 659 (6th Cir. 2004) (converting a § 1983 action to a *Bivens* claim because Defendants were specially deputized DEA agents); *Harris v. Gadd*, NO: 4:06CV01510 SWW, 208 U.S. Dist. LEXIS 7295 at *10 n. 7 (E.D. Ark. Jan. 16, 2008) (holding plaintiff failed to state a claim under § 1983 when Defendant "was employed by the Arkansas State Police [but had] committed the complained-of conduct in his capacity as a DEA federal drug task force officer"); *King v. United States*, 917 F.3d 409, 433 (6th Cir. 2019) (rev'd on other grounds) ("As a deputized federal agent, Detective Allen carried federal authority and acted under color of that authority rather than under any state authority he may have had as a Grand Rapids Detective.") (emphasizing state officer was "working full time with an FBI task force at the time of the incident at issue")).

As set forth above, both factors identified in *McLeod* confirm that Defendants Brown and Huddleston were federal actors. First, in this case, a federal nexus clearly exists. Most significantly, the warrant was referred to and adopted by the USMS, a seemingly dispositive factor in the *McLeod* analysis. Exhibit 5, USM-11 *See also Smith*, 743 F. App'x at 946. The USMS investigated the warrant, determined Plaintiff's correct address, and obtained authorization to proceed with execution of the warrant from United States Marshals Service Supervisory Inspector Kevin Connolly. Ex. 5 at 1.

Second, as already noted, the warrant was executed by longstanding deputized officers serving as part of the United States Marshals Capital Area Regional Fugitive Task Force. Ex. 1-2. Indeed, Plaintiff's Amended Complaint affirmatively alleges that Plaintiff was arrested by the United States Marshals Capital Area Regional Fugitive Task Force and that the Task Force "was headed by Defendant R. Craig Brown and included Defendant Warren M. Huddleston." Am. Compl., ¶ 28. Unlike *McLeod*, where the officers had been deputized the morning of the arrest, Defendants Brown and Huddleston had each been deputized in 2020 and were working as full-time deputized USMS officers at the time of arrest. Finally, as noted by the *McLeod* court on which Plaintiff relies (as well as numerous other courts referenced above), it is immaterial that the underlying warrant was issued by a state authority for a state crime. *McLeod*, 2021 U.S. Dist. LEXIS 238497 at *18-19 (citing *King*, 917 F.3d at 433).

Finally, Plaintiff's argument that Defendants were state actors due to the release of liability in the USMS Fugitive Task Force Memorandum of Understanding, ECF No. 33-1, is also without merit. As recognized by the Southern District of New York in *Lehal v. United States*, 2015 U.S. Dist. LEXIS 173610, contract language governing the formal employment status of state employees who had been deputized by the USMS does not affect the federal actor

7

analysis. *Id.* at *17-18. Rather, the analysis solely considers whether Defendants "were acting *under color of federal law* when they arrested Plaintiff." *Id.* (emphasis in original).

As a result, it is beyond dispute that the Defendants arrested Plaintiff "clothed with the authority" of federal law—a far cry from merely "donning vests or badges reading 'U.S. Marshals'—as suggested by Plaintiff—deeming them federal actors for the purpose of this case. Therefore, Plaintiff was required to serve the Defendants as federal actors pursuant to Fed R. Civ. P. 4(i).

**II.    The Court should proceed with abatement because Plaintiff failed to properly serve the Defendants within 90 days and is unable to establish good cause or identify any reason why the Court should exercise its discretion to excuse his failure.**

In order to effectuate proper service of process upon a federal official sued in his or her individual capacity, a plaintiff must accomplish three things: they must (1) effectuate personal service of the summons and complaint upon the individual official pursuant to Federal Rule 4(e), (f), or (g); (2) serve a copy of the summons and complaint upon the Office of the United States Attorney for the district in which the action is pending, either by certified or registered mail or by hand delivery; and (3) serve a copy of the summons and complaint upon the Attorney General by certified or registered mail. Fed. R. Civ. P. 4(i). A plaintiff is required to complete service within 90 days of filing a complaint. Fed. R. Civ. P. 4(m).

Here, it is undisputed that Plaintiff failed to properly serve the defendants under Rule 4(i) within the 90 day period because he failed to serve the Office of the United States Attorney or the Attorney General. There are three possible outcomes when a plaintiff fails to perfect service within the 90 day period: (1) if good cause exists for the failure, the court must grant plaintiff an extension of time to perfect service; (2) the court may, in its discretion, order plaintiff to

8

complete service within a specified time; or (3) the court may dismiss the action. Fed. R. civ. P. 4(m); *Gelin v. Shuman*, 35 F.4th 212, 219 (4th Cir. 2022).

In *Gelin*, the Fourth Circuit identified the meaning of "good cause" in this context as follows:

> Good cause requires a showing of diligence on the part of the plaintiffs. Consistent with that foundational principle, good cause is commonly found to exist when the failure of service is due to external factors, such as the defendant's intentional evasion of service, but significant periods of inactivity and a failure to seek extension of time before the deadline has lapsed tend to undercut any claim of good cause. At bottom, while good cause is a flexible standard, diligence provides a touchstone for an appellate court in its review. *See also* 4B Charles Alan Wright, Arthur R. Miller & Adam N. Steinman, Federal Practice and Procedure § 1137 (4th ed. 2015) (explaining that in evaluating good cause under Rule 4(m), "courts have rejected excuses based on . . . ignorance of the rule, the absence of prejudice to the defendant, . . . inadvertence of counsel, or the expenditure of efforts that fall short of real diligence by the serving party").

*Id.* at 218 (cleaned up).

The factors that a court should consider under the permissive "discretionary" standard are more flexible and less well-defined. For example, this Court noted: "While it is true that a court has the discretion to grant an extension of time even if there has been no good cause shown, such a decision is purely that: discretionary." *Collins v. Thornton*, 2018 U.S. Dist. LEXIS 248590, at *8 (E.D. Va. July 27, 2018) (Hudson J.) (denying plaintiff's request for a discretionary extension and dismissing case). "[T]he court would still need to have some reasoned basis to exercise its discretion and excuse the untimely service." *Jackson v. Whited*, 2023 U.S. Dist. LEXIS 126939, at *3 (W.D. Va. July 24, 2023). "In determining whether to grant a discretionary service deadline extension, courts have considered, among other factors, the length of the delay in service, whether the plaintiff attempted to serve process within the Rule 4(m) timeframe, and

whether the defendant would be prejudiced should the service deadline be extended." *McSheffrey v. Powers*, 2023 U.S. Dist. LEXIS 107341, at *27-28 (E.D. Va. May 15, 2023) (internal quotations omitted) (denying plaintiff's request for a discretionary extension and dismissing case). Finally, in *Coomes v. Moran*, 2023 U.S. Dist. LEXIS 99133 (D. Md. June 6, 2023), the court identified the following as factors that various courts have considered:

> (i) the possibility of prejudice to the defendant, (ii) the length of the delay and its impact on the proceedings, (iii) the reason(s) for the delay and whether the delay was within the plaintiff's control, (iv) whether the plaintiff sought an extension before the deadline, (v) the plaintiff's good faith, (vi) the plaintiff's pro se status, (vii) any prejudice to the plaintiff, such as by operation of statutes of limitation that may bar refiling, and (viii) whether time has previously been extended.

*Coomes v. Moran*, 2023 U.S. Dist. LEXIS 99133, at *10-11 (internal quotations omitted).

In the case at bar, Plaintiff is unable to establish good cause or identify any reason why the Court should exercise its discretion and excuse his failure to properly serve the Defendants. Plaintiff filed his original complaint on April 19, 2023. At the time he filed his original complaint, Plaintiff was aware that defendants were part of the United States Marshals Capital Area Regional Fugitive Task Force, as he affirmatively alleged that Defendant Brown "headed" the USMS Task Force, Defendant Huddleston was a member of the USMS Task Force, and Plaintiff was arrested by the USMS Task Force. ECF No. 1 at ¶¶ 26-27. Thus, Plaintiff was aware that Defendants were federal actors. Yet as of the filing of this response, 322 days have elapsed and Plaintiff has still not properly served the Defendants by serving the Office of the United States or the Attorney General, both of which are easily accomplished by certified mail. *See* Fed. R. Civ. P. 4(i)(1)(A)(ii) and 4(i)1(B).

Moreover, even if the Court were to consider excusing Plaintiff's potential uncertainty as to whether Defendants were federal actors at the time he filed his original complaint, any

10

potential uncertainty on that point was refuted no later than August 4, 2023. After speaking with Plaintiff's counsel by phone about the need to serve the Defendants as federal actors under Fed. R. Civ. P. 4(i), undersigned counsel emailed Plaintiff's counsel regarding the service issue on August 4, 2023. Undersigned counsel attached to that email copies of the Special Deputation forms for Defendants Brown and Huddleston, the same documents that are attached hereto as Exhibits 1 and 2. Email dated August 4, 2023, attached as Exhibit 6 at 1. That email also included a copy of the *Cain v. Rinehart* decision discussed above explaining that local law enforcement officers that are serving as deputized members of federal task forces are considered federal actors. Notably, that was only one of many email and telephone communications between undersigned counsel and Plaintiff's counsel regarding the need for Plaintiff to properly serve the Defendants. These email communications included:

- August 4, 2023: Notifying Plaintiff that he must comply with Fed. R. Civ. P. 4(i) because Defendants were federal actors, offering assistance if Plaintiff had questions about serving the Office of the United States or Attorney General, and providing copies of the Special Deputation Oaths of Office for Defendants Brown and Huddleston to establish they had been deputized and the *Cain v. Rinehart* decision;

- August 21, 2023: Noting that Defendants have not yet been properly served and inquiring about Plaintiff's intentions to do so;

- August 28, 2023: Asking again about the status of proper service after not receiving a response from Plaintiff;

- September 8, 2023: Recommending that Plaintiff ask the court clerk for assistance in properly serving federal Defendants, since neither the United States nor the Attorney General had yet been served;

- October 26, 2023: Asking if Plaintiff intends to effectuate service and noting that Defendants Brown and Huddleston had not yet been properly served; and

- November 8, 2023: Noting that case law supports that Defendants were federal actors and that service of the Amended Complaint has still not been perfected, attaching a second copy of the *Cain v. Rinehart* decision, as well as two additional cases: *Challenger v.*

*Bassolino*, 2023 U.S. Dist. LEXIS 113126 (D. N.J. June 30, 2023) (treating a county sheriff's office detective "who was a United States Marshals Task Force Officer at the relevant time" as a federal actor); *Fields v. United States*, 2023 U.S. Dist. LEXIS 85490 (S.D.W.V. May 16, 2023) (treating a deputy sheriff deputized as a United States Marshals Task Force Officer as a federal actor).

Copies of the emails are attached collectively as Exhibit 6. Additionally, on August 29, 2023, undersigned counsel filed a Limited Notice of Appearance indicating that Defendants were Special Deputy U.S. Marshals, that individual capacity representation had been approved, but that Defendants had not been properly served as required under Fed. R. Civ. P. 4(i) (ECF No. 18).

Thus, by no later August 4, 2023, Plaintiff was provided documentation–Special Deputation Oaths of Office for Defendants Brown and Huddleston–conclusively establishing that Defendants were federal actors and that Plaintiff needed to serve the Defendants in accordance with Fed. R. Civ. P. 4(i). Over the next 215 days, and in spite of at least seven emails and multiple phone calls, Plaintiff took no action to complete service on the Defendants in accordance with Fed. R. Civ. P. 4(i). In these circumstances, Plaintiff is unable to establish good cause or identify any reason why the Court should exercise its discretion and excuse his failure to properly serve the Defendants. Therefore, the Court should proceed with abatement and dismiss this action.

### III. Conclusion

For the foregoing reasons, Defendants were federal actors acting under color of federal law, and therefore were required to be served pursuant to Fed. R. Civ. P. 4(i). Because Plaintiff failed to properly serve Defendants for more than 300 days, and is unable to establish good cause or any basis for the Court's exercise of discretion, the Court should proceed with abatement and dismiss this case.

        Respectfully submitted,

        JESSICA D. ABER
        UNITED STATES ATTORNEY

By:    /s/_____
        Jonathan H. Hambrick
        VSB No. 37590
        Attorney for the Individual Defendants
        Office of the United States Attorney
        919 East Main Street, Suite 1900
        Richmond, Virginia 23219
        Telephone: (804) 819-5400
        Facsimile: (804) 771-2316
        Email: jay.h.hambrick@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of March, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

                                              /s/
                                      Jonathan H. Hambrick
                                      VSB No. 37590
                                      Attorney for the Individual Defendants
                                      Office of the United States Attorney
                                      919 East Main Street, Suite 1900
                                      Richmond, Virginia 23219
                                      Telephone:  (804) 819-5400
                                      Facsimile:  (804) 771-2316
                                      Email:  jay.h.hambrick@usdoj.gov