IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

FORD ANDREWS,

      Plaintiff,

v.                                Civil Action No. 3:23cv264

DETECTIVE R. CRAIG BROWN, *et al.*,

      Defendants.

## MEMORANDUM OPINION

This matter comes before the Court *sua sponte*. For the reasons articulated below, the

Court concludes that Plaintiff Ford Andrews has failed to properly serve Defendants Lieutenant

Warren M. Huddleston and Detective R. Craig Brown (collectively, the "Defendants")[1] in

accordance with Federal Rule of Civil Procedure 4(i).[2] Because Mr. Andrews fails to establish

---

[1] There are three remaining Defendants in this matter:  Detective R. Craig Brown, Lieutenant Warren M. Huddleston, and RB-HRIP Richmond Multifamily LLC.  Unless otherwise specified, the Court's reference to "Defendants" in this Memorandum Opinion shall refer only to Detective Brown and Lieutenant Huddleston.

[2] Rule 4(i) provides, in relevant part:

(i) SERVING THE UNITED STATES AND ITS AGENCIES, CORPORATIONS, OFFICERS, OR EMPLOYEES.

    (1) *United States.*  To serve the United States, a party must:

        (A)(i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought— or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk—or

        (ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;

good cause or identify any reason why the Court should exercise its discretion to excuse this failure, the Court will order the Clerk to proceed with abatement under Rule 4(m).[3]

## I.  Factual and Procedural Background

The Court begins with a summary of relevant allegations in the Amended Complaint and of the case proceedings to date.

### A.    Factual Background

Relevant to this Memorandum Opinion, Mr. Andrews' lawsuit arises from, *inter alia*, Defendants' "unlawful entry and excessive force", (ECF No. 20 ¶ 1), when they, "as members of the United States Marshals Capital Area Regional Fugitive Task Force[,] violently entered [Mr.

---

(B) send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and

(C) if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.

      \*      \*      \*

(3) *Officer or Employee Sued Individually.*  To serve a United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity), a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g).

Fed. R. Civ. P. 4(i).

[3] Rule 4(m) states, in relevant part:

(m) TIME LIMIT FOR SERVICE.  If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. . . .

Fed. R. Civ. P. 4(m).

Andrews'] apartment . . . to arrest him" on April 20, 2021.  (ECF No. 20 ¶ 19.)  Mr. Andrews

notes in his Amended Complaint that on the day of his arrest, the United States Marshals Capital

Area Regional Fugitive Task Force "was headed by Defendant R. Craig Brown and included

Defendant Warren M. Huddleston."  (ECF No. 20 ¶¶ 27–28.)

**B.** **Procedural Background**

**1.** **Mr. Andrews Attempted to Serve Defendants**

On April 19, 2023, Mr. Andrews initiated this action against Detective R. Craig Brown,

in his individual capacity, Lieutenant Warren M. Huddleston, in his individual capacity, and RB-

HRIP Richmond Multifamily LLC.  (ECF No. 1, at 1.)

On June 14, 2023, Mr. Andrews attempted to serve Detective Brown by posting at his

residence.  (ECF No. 12, at 2.)  On June 8, 2023, Mr. Andrews attempted to serve Lieutenant

Huddleston at his place of employment.  (ECF No. 13, at 2.)  On July 7, 2023, Mr. Andrews filed

executed summonses for Defendants R. Craig Brown and Warren M. Huddleston, both of whom

work for the United States Marshals Fugitive Task Force.  (ECF Nos. 12, 13, and 18, at 1.)  On

August 29, 2023, Jonathan H. Hambrick, an Assistant United States Attorney, entered a Limited

Notice of Appearance for Mr. Brown and Mr. Huddleston, stating that "to date, these defendants

have not been properly served in accordance with [Federal Rule of Civil Procedure] 4(i)."  (ECF

No. 18, at 1.)

On September 6, 2023, Mr. Andrews filed an Amended Complaint, which added a new

defendant, HRI Management, LLC.[4]  (ECF No. 20.)

---

[4] HRI Management, LLC has since been dismissed from this action.  (ECF No. 30, at 1.)

3

**2.    The Court Ordered the Clerk to File a Notice of the Clerk's Intention to Proceed with Abatement, and Ordered Briefing Regarding this Issue**

On February 2, 2024, the Court issued an Order noting that "[t]o date, there is no indication on the docket that Mr. Brown or Mr. Huddleston have been properly served in accordance with Fed. R. Civ. P. 4(i)." (ECF No. 31, at 3.) As a result, the Court directed the Clerk "to file a Notice of the Clerk's Intention to Proceed with Abatement." (ECF No. 31, at 3.) Two weeks later, on February 17, 2024, Mr. Andrews filed a Response to Notice of Abatement and/or Plaintiff's Motion to Allow Discovery ("Plaintiff's Response" or "Response"). (ECF No. 33.) On March 6, 2024, in response to a Court directive, Defendants' counsel timely filed a Position Statement on Abatement ("the United States' Response"). (ECF No. 35.)

## II.  Analysis

A plaintiff is required to complete service within 90 days of filing a complaint. Fed. R. Civ. P. 4(m). Federal Rule of Civil Procedure 4(i) mandates how to properly serve the United States and its agencies, corporations, officers, or employees. Fed. R. Civ. P. 4(i). To effectuate proper service of process upon a federal official sued in his or her individual capacity, a plaintiff must (1) effectuate personal service of the summons and complaint upon the individual official pursuant to Rule 4(e), (f), or (g); (2) serve a copy of the summons and complaint upon the Office of the United States Attorney for the district in which the action is pending, either by certified or registered mail or by hand delivery; and (3) serve a copy of the summons and complaint upon the United States Attorney General by certified or registered mail. Fed. R. Civ. P. 4(i).

Here, it is undisputed that Mr. Andrews has not served the Office of the United States Attorney or the United States Attorney General. If Defendants are federal actors, then, plainly, Mr. Andrews failed to properly serve them under Rule 4(i) within the requisite 90 day period

4

under Rule 4(m).  The Court will first address the issue of whether Mr. Andrews has plausibly

alleged that Defendants are federal actors.  Answering this question affirmatively, the Court will

then discuss why Mr. Andrews has not established good cause nor identified any reason why the

Court should exercise its discretion to excuse Mr. Andrews' failure to properly serve Defendants

under Rule 4(i).  As a result, the Court will direct the Clerk to proceed with Abatement as to

Defendants.

### A.      Defendants are Federal Actors

In his Response, Mr. Andrews argues that Defendants were not federal actors during his

arrest, and therefore did not need to be served under Rule 4(i).  (ECF No. 33, at 2–5.)  He argues

that "[T]ask [F]orce members" do not "become federal actors simply by donning vests or badges

reading 'U.S. Marshals,' or the like, which are readily available to the general public for

purchase on-line."  (ECF No. 33, at 2.)  Mr. Andrews emphasizes that "[n]o federal employees

comprised the [T]ask [F]orce involved in" his arrest and "[n]o federal offenses were charged in

the warrants to be executed."  (ECF No. 33, at 2–3.)  He further asserts that while "the United

States attorney . . . has continuously contended that [] the Multistate Task Force members who

entered [his] apartment were federal actors", "the Richmond prosecutor has been contending that

the Multistate Task Force members were state actors."  (ECF No. 33, at 4–5 (emphasis omitted).)

These arguments are unavailing.

### 1.    The Allegations in the Amended Complaint Establish that Defendants Acted as Part of a Federal Task Force, and Therefore Were Acting Under Color of Federal Law

As indicated above, the Amended Complaint establishes numerous times that Mr.

Andrews's claims against Defendants are premised on their actions taken as members of the

United States Marshals Capital Area Regional Fugitive Task Force while conducting Task Force

business during his April 20, 2021 arrest.  (ECF No. 20 ¶¶ 1, 19, 27–29, 31, 33, 36, 76.)

Relevant to this Memorandum Opinion, Mr. Andrews' lawsuit arises from, *inter alia*,

Defendants' "unlawful entry and excessive force", (ECF No. 20 ¶ 1), when they, "as members of

the United States Marshals Capital Area Regional Fugitive Task Force[,] violently entered [Mr.

Andrews'] apartment . . . to arrest him" on April 20, 2021.  (ECF No. 20 ¶ 19.)  Mr. Andrews

notes in his Amended Complaint that on the day of his arrest, the United States Marshals Capital

Area Regional Fugitive Task Force "was headed by Defendant R. Craig Brown and included

Defendant Warren M. Huddleston."  (ECF No. 20 ¶¶ 27–28.)  The court readily concludes that

the allegations in the Amended Complaint establish that Defendants acted as part of a federal

task force, and therefore were acting under color of federal law.

### 2.   The Greater Record Also Confirms that the Defendants Were Federal Actors

In its Response, the United States argues that "should the Court wish to look beyond

Plaintiff's own allegations, attached to this Position Statement are five exhibits confirming that

Defendants were acting under color of federal law in their roles as members of the United States

Marshals Capital Area Regional Fugitive Task Force when they arrested Plaintiff on April 20,

2021."  (ECF No. 35, at 2.)  These documents, one of which was also submitted by Mr. Andrews

himself, further undergird this conclusion.

Because both sides have submitted documents related to this issue and neither side

objects to their use, the Court will consider these documents, (ECF Nos. 35-1–35-6; ECF No. 33,

at 7–9), and the Court will deny Mr. Andrews's request to "allow for the parties to engage in

discovery" on this issue.  (ECF No. 33, at 5.)

Exhibits 1 and 2 of the United States' Response constitute the Special Deputation Oath of

Office, Authorization and Appointment, for Defendants R. Craig Brown and Warren M.

Huddleston, respectively. (ECF No. 35-1, at 2; ECF No. 35-2, at 2.) Exhibit 1 establishes that Detective Brown was deputized as a Special Deputy United States Marshal ("SpDUSM") on June 24, 2020, approximately ten months before Mr. Andrews' April 20, 2021 arrest, and that his deputization would remain in effect through July 31, 2022. (ECF No. 35-1, at 2.) Exhibit 2 establishes that Lieutenant Huddleston was deputized as a SpDUSM on December 15, 2020, approximately four months before Mr. Andrews' April 20, 2021 arrest, and that his deputization would remain in effect through December 31, 2023. (ECF No. 35-2, at 2.)

Exhibit 3 is a United States Marshals Service Capital Area Regional Fugitive Task Force Memorandum of Understanding with the Chesterfield County Police Department, effective May 3, 2018 (the "2018 MOU"). (ECF No. 35-3, at 2, 4.) In the 2018 MOU, the Chesterfield County Police Department agreed to become a participating agency and refer cases to the United States Marshals Capital Area Regional Fugitive Task Force. (ECF No. 35-3, at 2.) "At the time he was deputized as a SpDUSM," Detective Brown "was employed by the Chesterfield County Police Department." (ECF No. 35, at 3 n.1.)

Exhibit 4 is a United States Marshals Service Regional Fugitive Task Force Memorandum of Understanding with the Virginia Department of Corrections, effective January 8, 2021 (the "2021 MOU"). (ECF No. 35-4, at 2, 4.) "At the time he was deputized as a SpDUSM," Lieutenant Huddleston "was employed by the Virginia Department of Corrections." (ECF No. 35, at 3 n.2.) Mr. Andrews also provided a copy of the 2021 MOU as Exhibit 1 to his Response. (ECF No. 33, at 7–9.) The 2021 MOU notes that "[n]on-USMS law enforcement officers assigned to the task force will be deputized as Special Deputy U.S. Marshals." (ECF No. 33, at 7.)

Finally, Exhibit 5 is a United States Marshals USM-11 Report of Investigation documenting the referral and adoption of Mr. Andrews' arrest warrant by the Capital Area Regional Fugitive Task Force. (ECF No. 35-5, at 2–3.)

Although neither the Fourth Circuit nor courts in the Eastern District of Virginia have encountered the precise issue at bar, other courts have persuasively determined that local law enforcement officers who are deputized to serve on a task force operated by the U.S. Marshals Service are federal actors when they conduct task force business. *See, e.g.*, *Cain v. Rinehart*, No. 22-1893, 2023 WL 6439438, at *2 (6th Cir. July 25, 2023) (where "the source and implementation of authority for the task force that attempted to execute [an] arrest warrant . . . was the U.S. Marshal Service . . . [defendant] was not acting under color of state law at that time"); *Nelson v. Weber*, No. 3:16-cv-05680 BHS-JRC, 2017 WL 3034641, at *2–*3 (W.D. Wash. May 19, 2017), *report and recommendation adopted*, No. C16-5680 BHS-JRC, 2017 WL 3017632 (W.D. Wash. July 17, 2017) (state department of corrections officers deputized to a USMS Fugitive Task Force acted as federal actors, observing that "the Third, Sixth, and Tenth Circuits and district courts in the Second Circuit have categorized special deputies as federal actors" (collecting cases)); *Challenger v. Bassolino*, Civil No. 18-15240(KM)(MAH), 2023 WL 4287204, at *4 (D.N.J. June 30, 2023), appeal dismissed, No. 23-2339, 2023 WL 9378392 (3d Cir. Nov. 22, 2023) (detective acting as deputized Special Deputy U.S. Marshall acted under federal law while serving USMS Task Force).

Based on Mr. Andrews' own allegations that Defendants were executing an arrest warrant as part of the U.S. Marshals Capital Area Regional Fugitive Task Force when arresting Mr. Andrews, Mr. Andrews was mandated by the Federal Rules to serve the Defendants as federal actors under Rule 4(i). Mr. Andrews does not identify any case law that persuades

8

otherwise.  He cites only to *McLeod v. United States*, Civil Action No. 1:20-00595-JB-MU, 2021 WL 5906373, at *1 (S.D. Ala. Dec. 14, 2021) for the proposition that the Court should allow discovery to determine whether Defendants acted under state or federal authority at the time of Mr. Andrew's arrest.  (ECF No. 33, at 5.)  *McLeod* does not support Mr. Andrews' position.  In *McLeod*, unlike the case at bar, "questions remain[ed]" as to whether law enforcement officers were federal actors in part because they were deputized on the day of the operation and because the Court had no documents clarifying the officers' appointment.  2021 WL 5906373, at *2, *5–*8.  In contrast to *McLeod*, the Amended Complaint alleges that the United States Marshals Capital Area Regional Fugitive Task Force arrested him and that the Task Force "was headed by Defendant R. Craig Brown and included Defendant Warren M. Huddleston."  (ECF No. 20 ¶ 28.)

Both parties submit the 2021 MOU between the United States Marshals Service Regional Fugitive Task Force and the Virginia Department of Corrections in effect on the day of Mr. Andrews' arrest.  (*See* ECF No. 35-4, at 2, 4; ECF No. 33, at 7–9.)  This document bears separate analysis.  Mr. Andrews explains that the 2021 MOU provides that "'[e]ach [state] agency shall be responsible for the acts or omissions retains responsibility for the acts or omissions of its employees'" and "'each agency retains responsibility for the conduct of its personnel.'"  (ECF No. 33, at 2.)  As such, he says, they were state actors.  This argument founders for three reasons.

First, a contract's language does not affect the Court's analysis regarding whether an individual is a federal actor.  Simply put, "[r]egardless of [Defendant's] formal employment status . . . by virtue of having been deputized by the USMS", they acted "under color of federal law when they arrested [Mr. Andrews]." *Lehal v. United States*, No. 13CV3923 (DF), 2015 WL 9592706, at *6 (S.D.N.Y. Dec. 29, 2015) (emphasis omitted).  Second, the 2021 MOU has language clarifying that "[n]on-USMS law enforcement officers assigned to the task force will

9

be deputized as Special Deputy U.S. Marshals." (ECF No. 33, at 7.)  Third, as discussed above, additional exhibits provided by the United States further clarify that both Defendants were deputized as Special Deputy United States Marshals months before Mr. Andrews' April 20, 2021 arrest, and their deputizations remained in affect during his arrest.  (*See* ECF No. 35-1, at 2; ECF No. 35-2, at 2.)

Because it is undisputed that Plaintiff has not served the Office of the United States Attorney or the Attorney General, he has failed to properly serve Defendants in accordance with Rule 4(i).  *See* Fed. R. Civ. P. 4(i) (providing, *inter alia*, to effectuate proper service of process upon a federal official sued in his or her individual capacity, a plaintiff must (1) serve a copy of the summons and complaint upon the Office of the United States Attorney for the district in which the action is pending, either by certified or registered mail or by hand delivery; and (2) serve a copy of the summons and complaint upon the Attorney General by certified or registered mail.)  This failure continues despite repeated communications from Defendants of service requirements.  (ECF No. 18, at 1; ECF No. 35-6, at 4–15.)  Indeed, this Court's February 2, 2024 Order specifically directed service *pursuant to Rule 4(i)*, stating that "[t]o date, there is no indication on the docket that Mr. Brown or Mr. Huddleston have been properly served in accordance with Fed. R. Civ. P. 4(i)."  (ECF No. 31, at 3.)  Thus, the *lack* of service to date violates both the federal rule *and* this Court's Order.

**B.    The Court Will Direct the Clerk to Proceed with Abatement**

Having concluded that Mr. Andrews was mandated by the Federal Rules to serve the Defendants as federal actors under Rule 4(i), and has failed to do so, the Court will now discuss whether Mr. Andrews has (1) established good cause for not properly serving Defendants or (2)

identified any reason why the Court should exercise its discretion to excuse his failure to properly serve Defendants. For the reasons discussed below, he has not.

> **1.** **Legal Standard: Establishing Good Cause to Excuse Failure to Timely Serve**

As articulated above, Rule 4(m) provides that "if [a] plaintiff shows good cause for the failure" to timely serve a party within ninety days after the Complaint is filed, "the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m).

The United States Court of Appeals for the Fourth Circuit has explained that "good cause" under Rule 4(m) requires a showing of diligence on the part of the plaintiff. *Gelin v. Shuman*, 35 F.4th 212, 218 (4th Cir. 2022) (quoting *Attkisson v. Holder*, 925 F.3d 606, 627 (4th Cir. 2019)). Good exists where a failure of service is due to external factors, such as the defendant's intentional evasion of service. *See Gelin*, 35 F.4th at 218. "At bottom, while good cause is a flexible standard, diligence provides a touchstone" for whether good cause exists. *Id.* (cleaned up).

Significant periods of inactivity as well as a failure to seek an extension of time before the deadline has lapsed militate against a finding of good cause. *See Atkinson*, 925 F.3d at 627; *Gelin*, 35 F.4th at 218. Good cause is not established based on ignorance of the rule, the absence of prejudice to the defendant, inadvertence of counsel, or the expenditure of efforts that fall short of real diligence by the service party. *See Gelin*, 35 F.4th at 218 (citing 4B Charles Alan Wright, Arthur R. Miller & Adam N. Steinman, Federal Practice and Procedures § 1137 (4th ed. 2015)).

"Among the many factors bearing on the good cause inquiry are" the following: (1) "the possibility of prejudice to the defendant," (2) "the length of the delay and its impact on the proceedings," (3) "the reason(s) for the delay and whether the delay was within the plaintiff's control," (4) "whether the plaintiff sought an extension before the deadline," (5) "the plaintiff's

good faith," (6) "the plaintiff's *pro se* status," (7) "any prejudice to the plaintiff, such as by operation of statutes of limitation that may bar refiling, and" (8) "whether time has previously been extended." *Robinson v. G D C, Inc.*, 193 F.Supp. 3d 577, 580 (E.D. Va. 2016).

In *Gelin*, the Fourth Circuit affirmed a district court ruling finding that good cause had not been shown based on a "mistaken belief" that the defendants had been served. 35 F.4th at 216. Additionally, the *Gelin* court noted that the plaintiffs had made only a single attempt during the ninety-day period to obtain addresses for the defendants. *Id.* While negligence of plaintiff's counsel is one factor in a good cause analysis, it is not dispositive and can be outweighed by other factors that indicate diligence on the part of the plaintiff. *See Robinson*, 193 F.Supp. 3d at 581. Finally, courts generally look unfavorably upon inactivity on the part of the plaintiff during the ninety-day period, as well as a failure to request an extension before the deadline has passed. *See Atkinson*, 925 F.3d at 627; *Gelin*, 35 F.4th at 218.

## 2.   Legal Standard:  Granting an Extension To Serve Absent Good Cause

Even if a plaintiff fails to make a good cause showing for an extension under Rule 4(m), courts nonetheless have discretion to grant an extension to serve a defendant. *Gelin*, 35 F.4th at 214; *Henderson v. United States*, 517 U.S. 654, 663 (1996). Courts consider a variety of non-exhaustive factors that guide a discretionary decision to enlarge the service period. *Gabbidon v. Wilson*, Civil Action No. 1:19-00828, 2020 WL 1312871, at *2 (S.D.W. Va. 2020). Such factors include, like the good cause inquiry, the following:  (1) the possibility of prejudice to the defendant; (2) the length of the delay and its impact on the proceedings; (3) the reasons for the delay and whether the delay was within the plaintiff's control; (4) whether the plaintiff sought an extension before the deadline; (5) the plaintiff's good faith; (6) the plaintiff's *pro se* status; (7) any prejudice to the plaintiff; and (8) whether the time has previously been extended. *Gabbidon*,

2020 WL 1312871, at *2; *Robinson* 193 F. Supp. 3d at 580 (providing identical list of factors bearing on good cause inquiry).

### 3.      Mr. Andrews Fails to Establish Why the Clerk Should Not Proceed with Abatement

Mr. Andrews fails to establish good cause that excuses his failure to timely serve Defendants; he also fails to identify any reason why the Court should exercise its discretion, even absent good cause, to excuse this failure.[5]  At the time he filed his original Complaint, Mr. Andrews alleged that on the day of his arrest, the United States Marshals Capital Area Regional Fugitive Task Force "was headed by Defendant R. Craig Brown and included Defendant Warren M. Huddleston."  (ECF No. 1 ¶ 27.)  Therefore, at the time he filed his original Complaint, Mr. Andrews should have been aware that Defendants were federal actors.

Furthermore, even if Mr. Andrews' counsel was nonetheless uncertain as to whether Defendants were federal actors at this time, counsel for Defendants notified Mr. Andrews' counsel of this fact no later than August 4, 2023.  Defendants' counsel avers: "After speaking with Plaintiff's counsel by phone about the need to serve the Defendants as federal actors under [Rule 4(i)], undersigned counsel emailed Plaintiff's counsel regarding the service issue on August 4, 2023.  Undersigned counsel attached to that email copies of the Special Deputation forms for Defendants Brown and Huddleston, the same documents that are attached hereto as Exhibits 1 and 2."  (ECF No. 35, at 11 (citing ECF No. 35-6, at 1).)

After sending the August 4, 2023 email, Defendants' counsel sent additional emails to Mr. Andrews' counsel on August 21, 2023, August 28, 2023, September 8, 2023, October 26,

---

[5] Mr. Andrews's Response is silent as to this issue.  Instead, his Response focuses on his unsuccessful argument that Defendants are not federal actors, meaning he did not need to serve them under Rule 4(i).  (*See generally*, ECF No. 33.)

2023, and November 8, 2023 again raising that Defendants had not been properly served as federal actors. (*See* ECF No. 35-6, at 2–15.)[6]  In his August 4, 2023 and November 8, 2023 emails, Defendants' counsel also provided relevant case law supporting his position that Defendants were federal actors and that service had not yet been perfected against them. (*See* ECF No. 35-6, at 2, 14.)  In addition to these emails, Defendants' counsel also notes that there were multiple "telephone communications between [him] and Plaintiff's counsel regarding the need for Plaintiff to properly serve the Defendants." (ECF No. 35, at 11.)  Despite these communications, Mr. Andrews "took no action to complete service on the Defendants in accordance with Fed. R. Civ. P. 4(i)." (ECF No. 35, at 12.)

Despite initiating this action on April 19, 2023 and being made aware multiple times of his failure to properly serve Defendants as federal actors, Mr. Andrews has made no request for an extension of time to serve Defendants, nor has he indicated any diligence on his part to properly serve Defendants in his Response, nor has he sought to do so by seeking permission to file a Surreply detailing such efforts.  This weighs against finding good cause. *See Atkinson*, 925 F.3d at 627; *Gelin*, 35 F.4th at 218.  Furthermore, turning to the question of whether the Court should grant an extension even absent a showing of good cause, the delay in service was not outside Mr. Andrew's control, Mr. Andrews is not *pro se*, Defendants were not evasive,[7] and Mr. Andrews provides no reason for the Court to conclude that he acted diligently or made reasonable efforts to properly serve Defendants as federal actors. *Gabbidon*, 2020 WL 1312871,

---

[6] As previously noted, because neither side objects to the Court's use of each party's exhibits, the Court will consider these documents. (*See* ECF Nos. 35-1–35-6; ECF No. 33, at 7–9.)

[7] In fact, Defendants' counsel advised Mr. Andrews' counsel multiple times regarding the proper manner to serve Defendants. (*See generally*, ECF No. 35-6.)

at *2.  Finally, Mr. Andrews' Response provides no argument regarding any prejudice stemming from the Court's refusal to grant an extension to serve Defendants.  On this record, the Court cannot conclude that good cause exists, or that the Court should exercise its discretion to grant an extension for Mr. Andrews to properly serve Defendants.

### III.  Conclusion

For the foregoing reasons, the Court will order the Clerk to proceed with abatement under Fed. R. Civ. P. 4(m).[8]

It is SO ORDERED.

Date: 10/17/24
Richmond, Virginia

_____/s/_____
M. Hannah Lauck
United States District Judge

---

[8] Rule 4(m) states, in relevant part:

(m) TIME LIMIT FOR SERVICE.  If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. . . .

Fed. R. Civ. P. 4(m).